IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

NORMA JEAN MOREHEAD,

                     Plaintiff,

        vs.                                    Case No. 11-2269-SAC

DEERE & COMPANY, also known
as JOHN DEERE COMPANY,

                   Defendant.

MEMORANDUM AND ORDER

This employment case presents claims of race discrimination, retaliation and age discrimination and comes before the court on the defendant's motion for summary judgment. (Dk. 30). An employee of Deere & Company ("Deere") since 1979, Norma Jean Morehead applied and was selected to be interviewed for an internally posted opening that would have been a promotion for her. Six internal candidates were interviewed, their answers scored, and the position was given to a Caucasian woman who was younger and less experienced than Ms. Morehead. She complained about not getting the promotion and eventually filed a discrimination complaint. Ms. Morehead alleges she has since lost special assignments and projects, has been intimidated by supervisors, and has been physically struck by a supervisor.

In this summary judgment proceeding, Deere has shown there are no genuine issues of material fact disputing that it filled the opening with

the more qualified, educated and trained employee with stronger communication skills. Additionally, Ms. Morehead has failed to carry her burden of showing the defendant took materially adverse actions against her that are causally connected to her protected activity. In short, the record taken as a whole is insufficient for a rational jury to find for Ms. Morehead on her claims of disparate discrimination and her claim of retaliation. The defendant is entitled to summary judgment.

**Summary Judgment Standards**

Rule 56 authorizes a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it would affect the outcome of a claim or defense under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he dispute about a material fact is 'genuine,' . . ., if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

On summary judgment, the initial burden is with the movant to point out the portions of the record which show that the movant is entitled to judgment as a matter of law. *Thomas v. Wichita Coca–Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992), *cert. denied*, 506 U.S. 1013 (1992). Instead of disproving a claim or defense, the movant need only show "a lack

of evidence" on an essential element. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). If the movant meets that burden, the non-movant must come forward with specific facts based on admissible evidence from which a rational fact finder could find in the non-movant's favor. *Id.* The non-movant's "burden to respond arises only if the" movant meets its initial burden of production. *Neal v. Lewis*, 414 F.3d 1244, 1248 (10th Cir. 2005) (citation omitted). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether the evidence is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. at 251–52. Put another way, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *See Pinkerton v. Colorado Dept. of Transp.*, 563 F.3d 1052, 1058 (10th Cir. 2009).

In applying this standard, all inferences arising from the record must be drawn in favor of the nonmovant. *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1216 (10th Cir. 2003). Credibility determinations and the weighing of the evidence are jury functions, not those of a judge. *Id.* at 1216. Nevertheless, "the nonmovant must establish, at a minimum, 'an inference of the existence of each element essential to [her] case.'" *Croy v.*

3

*COBE Laboratories, Inc.*, 345 F.3d 1199, 1201 (10th Cir.2003) (quoting *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir.1994)).

**Statement of Facts**

Norma Jean Morehead, an African-American woman born in 1957, was hired in 1979 as a mail clerk for Deere in Waterloo, Iowa. Her second promotion relocated her to Deere's office in Lenexa, Kansas, where she was promoted to a secretarial position in 1992 and then a division administrator position in 1998. Four years later, she was moved to a new department and given the position of Order Fulfillment Coordinator with an elevated pay grade. She has held this position since 2002 and is responsible for assisting dealers and others over the telephone with online orders and the order fulfillment programs. During the relevant time periods, she has received "on target" job performance reviews with ratings from "highly successful" to "successful." Her immediate supervisor in Lenexa is Jamie Feeback who is supervised by a manager, Larry Jackson, who offices in North Carolina but occasionally visits the Lenexa office.

In November of 2009, Deere published on its internal job posting site an opening for Order Fulfillment Instructor II for Agricultural & Turf Region 4. The posted primary responsibility of this position was to "create and deliver Order Fulfillment training to John Deere channel partners, field personnel and other organizations" and to "prepare instructional materials

4

and job aids for courses." (Dk. 36-1, p. 62). Region 4's area included the
United States, Canada, Australia and New Zealand, and so the instructor
position would be required to work with other countries. In describing "What
It Takes," the posting also stated that an instructor would need "excellent
communications and presentations skills," "outstanding and effective writing
skills," and "[i]deally . . . [would] have a bachelor's degree in a business
related discipline or a minimum of 4 years experience developing training
materials." *Id*. The instructor also was required to understand both "Dealer
Complete Goods operations and processes," and "Complete Goods
operations from the manufacturing perspective" and to have "[f]irm
foundational knowledge of the Enterprise Order Fulfillment Process." *Id*. The
hiring manager for this position was Jill Vandemore, Manager of Global Order
Fulfillment Training, Agricultural & Turf Division. She did not regard years of
service at Deere to be a factor in filling this instructor position.

      Morehead submitted an internal resume for this instructor
opening. She was one of six internal candidates selected in December of
2009 for interviews with Vandemore.  Candidates also were interviewed by
Jackson and Angela Baker, training and development specialist, who then
gave their input to Vandemore. The three interviewers used Deere's targeted
selection interviewing method that evaluates a candidate's competencies
based on past behavior. The interviewers used uniform guides with scripted

questions, and the candidates' responses were scored. The candidate

receiving the highest score was Brittaney Edwards, who is Caucasian and

younger than the plaintiff. The plaintiff's score was next to last of the

candidates, and the lowest score went to a candidate who also was

Caucasian and younger than the plaintiff.

The instructor position was offered to Edwards who accepted it.

She had been working as Order and Shipping Services Coordinator at

Deere's facility in Cary, North Carolina. In her former position, Edwards had

received development and training experience, had helped to develop

training material used with dealers, and had served as a subject matter

expert and instructor in training and education programs for dealers and

company sales and marketing personnel. This work experience of Edwards,

in Vandemore's opinion, "aligned with primary responsibilities of the"

instructor position to be filled. (Dk. 32-2, ¶ 12).  Edwards gave specific and

detailed examples in her responses to the behavioral-based questions, and

she emphasized her desire to educate and train others. She also had a

Bachelor of Science degree in a business-related discipline and expressed a

desire on her resume to international exposure or experience.

In her evaluation of Morehead, Vandemore noted her fifth-

ranked score and her lack of internal or external training and development

skills and experience for the position. Vandemore noted that Morehead

6

"made numerous negative comments regarding the new Region 4 order fulfillment organization, which raised serious concerns about her ability to motivate others in order to produce results." (Dk. 32-2, ¶ 15). Morehead's interview "answers were disjointed or non-responsive . . ., and based on the interviews Edwards' communication skills were stronger." *Id*. As Vandemore noted, Morehead expressed on her resume that she did not want international experience or exposure.

Her immediate supervisor, Jamie Feeback, spoke with Morehead about not getting the instructor position, and it was arranged for Morehead to talk with Larry Jackson. Morehead wanted an explanation for the hiring decision. At the meeting on January 14, 2010, she told Jackson that the hiring "wasn't right," that the person hired lacked the posted qualifications, and that "it was questionable." (Dk. 32-1, Dep. at 58).

Ms. Morehead complains about Larry Jackson's treatment of her. When he interviewed her for the instructor position in December of 2009, Morehead observed that Jackson asked only some questions from the interview guidelines, did not write down many of her responses, and conducted the interview for a shorter time--only thirty minutes. Jackson also explained to Morehead the rumor that he had written "saving the best for last" on his calendar next to the name of the last candidate interviewee, Brittaney Edwards.  (Dk. 32-1, Dep. at 14). In "the first part of 2010,"

7

Morehead made some comments at a group meeting, but Jackson talked over her and failed to acknowledge her comments.  (Dk. 32-1, Dep. at 79-81). In February or March of 2010, Jackson spoke with Morehead saying he had an issue and needed to discuss it with someone experienced. Morehead said that Jackson "sneered" in saying he needed someone "who has all those years of experience" and then did not appear to listen to anything she said. (Dk. 32-1, Dep. 83).  Also sometime during 2010, Jackson noticed magnets on Morehead's desk, and she explained them to be calming and cool. Jackson replied, "Yeah, calming and cool" and walked away. *Id*. at 86. On another occasion, Jackson noticed on Morehead's desk a biblical statute of two angels fighting, and then he commented that he liked angels and that the large angel had won. Morehead recalls a time that Jackson was shouting at her, because he did not think Morehead could hear him over the classical music which she was listening to in her office. When Jackson asked what she was listening to, Morehead said "classical music," and Jackson "just kind of looked at" her and then walked away. *Id*. at 88-89. Morehead was doing a personal class assignment at her desk after business hours when Jackson and Charles Hammes approached her and asked what she was doing. She explained that she needed the software found on her work computer, and "they had sneers on their face." *Id*. at 89. Morehead recalls that in September 2010, Jackson was overhearing her and a coworker laughing

8

over something, and Jackson quipped, "You don't deserve to be that happy." *Id*. at 91.

On April 20, 2011, Deere hosted for its employees a lunch with free pizza. Morehead was getting a slice of pizza to put in her box when Jackson came up from behind to grab a slice while saying, "I think I found the piece I want." *Id*. at 97. As he reached around her, Jackson's elbow and forearm struck Morehead on her right side and then pushed up the box that Morehead was carrying in front of her.  Morehead complained about this incident to human resources which then investigated it. Human resources personnel subsequently shared with Morehead that their investigation did not reveal a witness confirming her account of this incident. They also discussed with Morehead other options such as finding another position in the company or checking out retirement or other employment.

In 2010, Morehead attended four different training events provided by Deere. Morehead admitted these events were beneficial and enhanced her skill set and her knowledge and understanding of dealer business. She was a subject matter expert in her department on a new version of a software program. In this role, there were review meetings and suggestions to make before the software went into operation in October 2010. In that same month, Morehead made a presentation to Deere's CEO and to the president of its agricultural and turf division. When Jamie Feeback

first asked her to do this, the plaintiff declined but changed her mind when Charles Hammes asked her to do it. For her presentation, Morehead received compliments from Charles Hammes and Larry Jackson.

On June 28, 2010, Morehead filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). She alleged that she was not chosen for the instructor position because of her race and age. On December 6, 2010, she amended her charge adding an allegation that she was excluded from projects and assignments in retaliation for bringing a discrimination charge. Morehead filed a second charge in July of 2011 alleging retaliation based on the pizza lunch incident. Morehead filed this action in federal court on May 13, 2011, and her amended complaint on May 31, 2012.  As outlined in the pretrial order, Morehead seeks to recover for being denied a promotion because of her race in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2003 *et seq.*, and because of her age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* and for suffering retaliatory adverse actions in the terms and conditions of her employment in violation of Title VII and the ADEA.

**Failure to Promote to Instructor Position**

The plaintiff asserts age and gender discrimination in Deere's failure to promote her to the instructor position. To prove discrimination, the

10

plaintiff may rely on direct or circumstantial evidence. *Sanders v. Southwestern Bell Telephone, L.P.,* 544 F.3d 1101, 1105 (10th Cir. 2008), *cert. denied*, 130 S. Ct. 69 (2009). Because Morehead relies on circumstantial evidence, her claims are analyzed under the *McDonnell Douglas* burden-shifting framework. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and applying the framework to both Title VII and ADEA discrimination claims); *see Simmons v. Sykes Enterprises, Inc.*, 647 F.3d 943, 947 (10th Cir. 2011) (Under the ADEA, a plaintiff must prove her age was the "'but-for' cause . . . or 'the factor that made a difference," but a court still uses the *McDonnell Douglas* framework to evaluate an ADEA claim based on circumstantial evidence). This framework gives the plaintiff "the initial burden of setting forth a prima facie case of discrimination," and only then does the burden shift "to the employer to give a legitimate reason for its employment decision." *Sanders*, 544 F.3d at 1105 (internal quotation marks and citations omitted). If a nondiscriminatory reason is put forward, "'the burden then reverts to the plaintiff to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief.'" *Id.* (quoting *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir. 1997)). A plaintiff avoids summary judgment upon demonstrating pretext. *Id.*

There appears to be no challenge that the summary judgment record supports a prima facie case of race and age discrimination in the plaintiff's promotion denial. For its legitimate and non-discriminatory reasons, Deere has put forward that its hiring manager, Jill Vandemore, chose Edwards over the plaintiff for the instructor position, because Edwards was the most qualified applicant.  Edwards had the highest interview scores based in part on her communication skills and her enthusiasm for training and educating others.  She expressed an interest in international exposure and experience. Edwards also had training and development experience, including the development of training material used with dealers, which matched the primary demands for this instructor position. With a bachelor's degree in a business-related discipline, Edwards also matched one of the qualities wanted for the ideal candidate.

These reasons offered by Deere cause "the presumption of discrimination created by the plaintiff's prima facie case 'simply [to] drop[] out of the picture,'" *Swackhammer v. Sprint/United Management Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)), and the burden shifts back to the plaintiff to show the defendant's proffered reasons are a "'pretext masking discriminatory animus.'" *Proctor v. United Parcel Service*, 502 F.3d 1200, 1208 (10th Cir. 2007) (*quoting Piercy v. Maketa*, 480 F.3d 1192, 1198 (10th

12

Cir. 2007)).  The plaintiff "must point to some admissible evidence showing that the . . . [the defendant's] proffered explanation is mere pretext." *Mathews v. Denver Newspaper Agency LLP*, 649 F.3d 1199, 1211 (10th Cir. 2011).  "[A] pretext argument provides a method of satisfying this burden by allowing the factfinder 'to infer the ultimate fact of discrimination from the falsity of the employer's explanation.'" *Swackhammer*, 493 F.3d at 1167 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000)).  A plaintiff can show pretext with evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1203 (10th Cir. 2006) (citations and internal quotation marks omitted).  "Evidence of pretext may include prior treatment of the plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating . . . criteria); and the use of subjective criteria." *Jaramillo v. Colorado Judicial Dept.*, 427 F.3d 1303, 1308 (10th Cir. 2005) (citations and internal quotation marks omitted).  "Evidence that the employer should not have made the . . . [employment] decision—for example, that the employer was

mistaken or used poor business judgment—is not sufficient to show that the employer's explanation is unworthy of credibility." *Swackhammer*, 493 F.3d at 1169–70. "Demonstrating pretext enables a plaintiff to survive summary judgment." *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1113 (10th Cir. 2007).

Direct evidence proving a defendant's stated reasons to be false is a typical way of proving pretext. *Swackhammer*, 493 F.3d at 1167. Morehead does not directly challenge the truthfulness or evidence behind any of Deere's stated reasons for regarding Edwards to be the most qualified candidate. The plaintiff does not come forward with any evidence raising material questions of fact as to Deere's non-discriminatory use of its targeted selection interviewing method with scripted questions and the higher scores received by Edwards. Morehead even concedes that Deere's practice apparently "places a great deal of emphasis on its interview techniques." (Dk. 36, p. 19). Without any supporting evidence or tenable arguments, Morehead offers only her conclusory opinion that "the standard can be quite subjective." *Id*. That her interview with Jackson was shorter than the other interviews and that he may have gone into the interview process believing one candidate was the "best" are not circumstances undermining Vandemore's credibility in using the interview scores in her decision as hiring manager. Jackson's "saving the best for last" comment is

14

simply too abstract and ambiguous to support any inference of a lurking discriminatory motive that would cast doubt on the real reasons behind Deere's promotion decision.

Pretext cannot be demonstrated simply from Morehead's personal opinion that she was qualified for the instructor position and the strongest candidate by reason of experience and seniority. A court "must proceed with caution with considering the relative merits of individual employees." *Jaramillo v. Colorado Judicial Dept.*, 427 F.3d at 1308. The court does not "act as a 'super personnel department' that second guesses employers' business judgments" for its role is limited to addressing unlawful discrimination. *Id.* (quoting *Simms v. Oklahoma ex rel. Dept of Mental Health*, 165 F.3d 1321, 1330 (10th Cir.), *cert. denied*, 528 U.S. 815 (1999)). Consequently, "an employee's own opinions about [her] qualifications do not give rise to a material factual dispute." *Simms*, 165 F.3d at 1329 (quotation and alterations omitted). To support an inference of pretext in Deere's choice of Edwards as the more qualified candidate, Morehead "must come forward with facts showing an overwhelming disparity in qualifications." *Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1211 (10th Cir. 2010) (internal quotation marks and citation omitted).

Morehead does not come forward with any evidence to suggest that Deere did not really believe Edwards was more qualified than Morehead.

15

The only disparity favoring Morehead was her seniority and general work experience. Other than stating this difference in years with Deere, Morehead points to nothing irregular or pretextual in Vandemore taking the position that seniority with Deere would not be a factor in the hiring decision for this instructor position. Finally, Morehead lists her general administrative experience and her years of work in customer service. Deere, however, placed more importance on Edwards' experience in training others, in serving as an instructor and in developing training material, all of which more closely matched the principal responsibilities of this instructor position. To counter this difference, Morehead alleges that Deere offered more training opportunities to Edwards in order to improve her chances for advancement. The plaintiff's arguments and her testimony on this point are simply speculative, as she has not demonstrated any personal, firsthand knowledge that would support reasonable inferences from admissible testimony. "Mere conjecture that the employer's explanation is pretext is insufficient to defeat summary judgment." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (citation omitted). Suffice it to say, the summary judgment record simply does not come close to suggesting pretext from the disparity in qualifications.

Morehead has failed to meet her burden of presenting evidence of a genuine factual dispute over the sincerity or good faith of Deere's

proffered reasons for promoting Edwards rather than the plaintiff. Summary judgment cannot be avoided on mere allegations of motive or on mere conjecture about qualifications and training opportunities. Deere may legitimately promote someone based on having better interview scores, a business-related college degree, and more relevant job experience and accomplishments. "Degrees, professional certifications, and similar achievements are legitimate bases on which to differentiate among competing candidates." *Doyle v. Nordam Group, Inc.*, 2012 WL 2820222 at *4 (10th Cir. 2012) (citing *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1458 (10th Cir. 1994) ("[E]mployer [is] entitled to rely on superior educational credentials in retaining more qualified younger employee over older employee with more seniority.")). Deere is entitled to summary judgment on the plaintiff's claims of race and age discrimination for failure to promote.

**Retaliation for Filing an EEOC Charge of Discrimination**

On a claim of retaliation in which the plaintiff relies exclusively "upon indirect evidence to avoid summary judgment . . ., the courts employ the burden-shifting framework of *McDonnell Douglas*, under which the plaintiff bears the initial burden of establishing a *prima facie* case." *Mathew v. Denver Newspaper Agency LLP,* 649 F.3d at 1210 (citation omitted). A *prima facie* case of retaliation requires the plaintiff to "show that (1) she engaged in protected opposition to discrimination; (2) a reasonable person

would have found her employer's subsequent action to be materially adverse; and (3) a causal connection exists between her protected activity and the employer's action." *Semsroth v. City of Wichita*, 555 F.3d 1182, 1184 (10th Cir. 2009) (citation omitted).

In framing the scope of this claim, Deere first argues that Morehead did not engage in protected activity until she filed her EEOC charge of discrimination in June of 2010. Morehead did meet with Jackson in January 2010 and complained that the hiring "wasn't right," that the position was given to someone who lacked the posted qualifications, and that "it was questionable." (Dk. 32-1, Dep. at 58). Deere argues this internal complaint is not protected activity because Morehead did not raise any complaints of discrimination based on race or age. Morehead now argues that Deere "over-reads its facts" and that "no one (including Ms. Morehead) says specifically whether discrimination was raised as an issue at" the January meeting. (Dk. 36, p. 23).

"Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [anti-discrimination statutes]." *Hinds v. Sprint/United Management Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008). "Protected opposition can range from filing formal charges to voicing informal complaints to superiors." *Hertz v.*

18

*Luzenac America, Inc.,* 370 F.3d 1014, 1015 (10th Cir. 2004) (citation omitted). "General complaints about company management and one's own negative performance evaluation will not suffice," unless they are tied to a discriminatory motive and practice. *Hinds*, 523 F.3d at 1203. "When an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication" virtually always "constitutes the employee's opposition to the activity." *Crawford v. Metropolitan Government of Nashville and Davidson County, Tenn.*, 555 U.S. 271, 276 (2009) (citations omitted). There is no evidence in the summary judgment record that Morehead's conversation with Jackson in January 2010 included any statement by her to indicate her concern or complaint was that race or age discrimination was involved. As for her comment about the promotion being "questionable," this is a vague reference that does not constitute protected activity. *See Hinds*, 523 F.3d at 1203 n. 13. Thus, the court accepts from the plaintiff's memorandum that her claim is for "retaliation resulting from her filing a charge of discrimination with the" EEOC. (Dk. 36, p. 20). This also means the plaintiff's retaliation claim only encompasses Deere's actions taken after June 28, 2010, that is, subsequent to her EEOC filing. *See Semsroth*, 555 F.3d at 1184.

19

Deere next challenges Morehead's proof of the second element to her prima facie case. What Morehead alleges as retaliatory acts are not what a reasonable person would consider being materially adverse. Consistent with the purposes behind the antiretaliation statutes to protect individuals "not from all retaliation, but from retaliation that produces an injury or harm," the Supreme Court held that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006). The Court said, "it is important to separate significant from trivial harms," and Title VII was not intended to establish "a general civility code for the American workplace." *Id.* (internal quotation marks and citation omitted). "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* (citation omitted). "And while the standard is sensitive to the particular circumstances of each case, . . ., it prescribes an objective inquiry that does not turn on a plaintiff's personal feelings about those circumstances," but on a reasonable person's perspective considering all the circumstances. *Semsroth*, 555 F.3d at 1184 (citations omitted). In the Tenth Circuit, "[a]cts that carry a significant risk

20

of humiliation, damage to reputation, and a concomitant harm to future employment prospects may be considered adverse actions, although a mere inconvenience or an alteration of job responsibilities will not suffice." *Reinhardt v. Albuquerque Public Schools Bd.*, 595 F.3d 1126, 1133 (10th Cir. 2010) (citation omitted).

In her summary judgment memorandum, Morehead lists from her deposition testimony what she regards as Deere's retaliatory acts and cites either Deere's or her uncontested material fact statements. (Dk. 36, p. 21). She first asserts Jackson's failure to acknowledge her comments at a meeting and also Jackson's "sneer" while seeking help from Morehead and his mocking tone in referring to all of her years of experience. According to Morehead's deposition testimony, both actions occurred prior to her EEOC filing in June of 2010. Therefore, they cannot be *subsequent* adverse actions under the second element.

Morehead next lists a number of instances of rude behavior or snubbing by Lawrence Jackson. Morehead regarded as disparaging and inappropriate Jackson's comments about her having magnets at her desk and about the angel statute on her desk. Jackson shouted one morning so that he could be heard over the classical music that Morehead had playing in her office. The faces of Morehead and Hammes showed their disapproval when Morehead explained she was staying late to do personal homework on

21

her computer. Lastly, Morehead was offended when Jackson quipped, "You don't deserve to be that happy," in response to laughter from Morehead and a coworker. The evidence of record shows these events to be no more than snubs, petty slights, lack of good manners or minor annoyances that do no rise to the level of being material adverse actions. There is nothing to show them to be anything more than the ordinary tribulations of the workplace that include personality differences and conflicts. "[M]inor and even trivial employment acts that an irritable, chip-on-the-shoulder employee did not like . . . [will not] form the basis of a discrimination suit." *Johnson v. Weld County, Colo.*, 594 F.3d at 1216 (internal quotation marks and citations omitted). All these circumstances, individually and together, are simply insufficient to dissuade a reasonable worker from making a charge of discrimination. Nor did they dissuade the plaintiff from amending her discrimination charges in December of 2010 and from filing another charge in July of 2011. *See Somoza v. University of Denver*, 513 F.3d 1206, 1214 (10th Cir. 2008) ("[T]he fact that a plaintiff continues to be undeterred in his or her pursuit of a remedy, as here was the case, may shed light as to whether the actions are sufficiently material and adverse to be actionable.").

The last two alleged retaliatory acts listed by Morehead are Jackson's physical contact with her while he was grabbing a slice of pizza and the response from Deere's human resource department when she

complained about the pizza incident. The plaintiff certainly regards this physical contact to have been bothersome, annoying and disturbing. The record, however, does not show it to be more than an isolated event that appears more incidental than intentional in character. The circumstances simply do not support elevating this single rude act into something that would dissuade a reasonable person from making a discrimination complaint. Indeed, the plaintiff immediately went to the human resources department about this incident and an investigation was made. Nor can it be termed a materially adverse act that in discussing their investigation and the workplace situation, the human resources personnel raised and discussed some of the alternatives available to Morehead. As of the summary judgment filings, the plaintiff is still an employee at Deere. Even if the court were to accept these latter acts as materially adverse, the plaintiff has not met her burden of showing a causal connection. The pizza incident and investigation occurred nearly ten months after she filed the original charge and more than four months after she amended that charge. Unless the acts occur "very close in time" to the adverse acts, the plaintiff cannot rely on temporal proximity alone to prove causation "and [she] must come forward with additional evidence." *Hinds*, 523 F.3d at 1204. "[A] three-month period, standing alone, will not suffice." *Id.* With no offering of additional evidence in

this summary judgment record, the plaintiff cannot escape summary

judgment on this claim.[1]

      IT IS THEREFORE ORDERED that Deere's motion for summary

judgment (Dk. 30) is granted.

      Dated this 14th day of December, 2012, Topeka, Kansas.


                  s/ Sam A. Crow
                  Sam A. Crow, U.S. District Senior Judge

---

[1] The court concurs with Deere that the plaintiff has abandoned her claim of retaliatory acts based on the lack of special training, special work assignments, or special projects. The plaintiff has not offered any supporting statement of facts with proper citations to the summary judgment record. The plaintiff "admitted" Deere's statement of facts, ¶¶ 37-42, which outline the plaintiff's opportunities and participation in various special training events and special work assignments for 2010.